IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CHARLES ROBINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-07-236-C |
| | ) | |
| MARY BETH CARNEY, R.N. and | ) | |
| NURSE WILLS, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

The Plaintiff has sued for deliberate indifference to a serious medical condition. According to Mr. Robinson, the Defendants violated the federal constitution through:

- deliberate delay of pain medication and

- denial of medical treatment on December 8, 2006.[1]

---

[1] In the complaint, Mr. Robinson refers generally to inadequate medical treatment since July 2005. *See* Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 at pp. 2, 4 (Feb. 26, 2007) ("Complaint"). But the only examples given are the two categories of complaints identified in the text. *See id.*, *passim*. And Mr. Robinson elsewhere stresses that "[he] filed this 1983 civil complaint because R.N. Nurse Carney [had] refused to see" him on December 8, 2006. Plaintiff's Response to Defendent's [sic] Motion for Summary Judgement at p. 1 (July 24, 2007) ("Plaintiff's Response"). As a result, the Court should not construe the complaint to include a claim for a general lack of proper medical care separate from the denial of pain medication or refusal to provide treatment on December 8, 2006.

The Defendants move for dismissal and summary judgment.[2] The Court should dismiss the first claim and allow the second one to proceed.

STANDARDS FOR DISMISSAL OR SUMMARY JUDGMENT

I.   Dismissal for Failure to State a Valid Claim

Dismissal for failure to state a valid claim is proper only if the Plaintiff pleads "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1974 (2007). The well-pleaded factual allegations in the complaint must be accepted as true and construed in the light most favorable to the Plaintiff. *See Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990). A *pro se* complaint like Mr. Robinson's must be broadly construed under this standard. *See Gaines v. Stenseng*, 292 F.3d 1222, 1224 (10th Cir. 2002).

II.  Summary Judgment

Summary judgment is necessary when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When a summary judgment motion is filed, "[t]he court views the record and draws all favorable inferences in the light most favorable to the

---

[2] The title of the document suggests that the Defendants are seeking summary judgment, but not dismissal. *See* Defendants' Motion for Summary Judgment at p. 1 (July 3, 2007) ("Defendants' Dispositive Motion"). In the text, however, the Defendants request dismissal on the issue involving exhaustion of administrative remedies. *See id.* at p. 3.

non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005) (citation omitted).

## PARTIAL NONEXHAUSTION OF AVAILABLE ADMINISTRATIVE REMEDIES

In part, Mr. Robinson seeks damages based on Nurse Wills' alleged delay in supplying pain medication. Complaint at p. 5. The Defendants contend that the Plaintiff has not exhausted this claim. Defendants' Dispositive Motion at p. 3. They are correct.

Federal law provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) (2000). This law "requires proper exhaustion" of the prison's administrative remedies. *Woodford v. Ngo*, ___ U.S. ___, 126 S. Ct. 2378, 2387 (2006).

The Oklahoma Department of Corrections ("DOC") has created an administrative process.[3] *See* Inmate/Offender Grievance Process, DOC OP-090124 (eff. May 3, 2007).[4] An inmate should initially attempt to informally resolve the claim with a staff member. *See*

---

[3] The parties do not question the applicability of the DOC procedures. *See* Defendants' Dispositive Motion at p. 3 ("This [Lawton Correctional Facility] policy is in compliance with DOC Policy OP-090124"); Plaintiff's Response at p. 2 (quoting from DOC Policy OP-090124).

[4] The DOC updated its grievance policy after the events giving rise to this suit. *See* Inmate/Offender Grievance Process, DOC OP-090124 at p. 16 (eff. May 3, 2007) (noting the replacement of the June 29, 2005, policy and the subsequent amendments). The update is immaterial here.

*id.* at p. 5. If that attempt is unsuccessful, an inmate may file an informal request to staff. *See id.* The prisoner can file a grievance if he is unhappy with the result or if authorities fail to respond within 30 days. *See id.* at p. 6. If the inmate remains dissatisfied, he can appeal to the administrative review authority. *See id.* at pp. 9-10.

Mr. Robinson did not utilize the administrative process on the claim involving a delay in his pain medication.

The Plaintiff has attached administrative complaints regarding the "pill call" procedures. Plaintiff's Response, Exh. 2. But there Mr. Robinson was only complaining about inconsistencies in the timing of "pill call." *See* Plaintiff's Response, Exhs. 2-4. The Plaintiff never accused any of the nurses, such as Ms. Wills, of deliberately delaying pain medication. *See id.* Consequently, the administrative record did not alert prison officials to an allegation involving intentional delay in the supply of Mr. Robinson's pain medication.[5]

Mr. Robinson did not exhaust his claim concerning the delay in pain medication, and the Court should dismiss this cause of action without prejudice to refiling. *See Kikumura v. Osagie*, 461 F.3d 1269, 1290 (10th Cir. 2006) ("'[a] dismissal based on lack of exhaustion . . . should ordinarily be without prejudice'" (citation omitted)).

---

[5]  *See Kikumura v. Osagie*, 461 F.3d 1269, 1282-85 (10th Cir. 2006) ("[W]e hold that a grievance satisfies § 1997e(a)'s exhaustion requirement [only] so long as it provides prison officials with enough information to investigate and address the inmate's complaint internally."); *see also Paulino v. (FNU) (LNU)*, 203 Fed. Appx. 942, 944 (10th Cir. Nov. 6, 2006) (unpublished op.) (upholding the district court's conclusion that grievances had not supplied prison officials with sufficient notice to investigate specific claims).

## THE PLAINTIFF'S REMAINING CLAIM INVOLVING
## DELIBERATE INDIFFERENCE TO MEDICAL NEEDS

The Plaintiff also alleges deliberate indifference through a refusal to provide medical treatment on December 8, 2006. Complaint at pp. 2, 4-5. According to the Defendants, Mr. Robinson has failed to present evidence involving substantial harm from the delay in medical treatment. Defendants' Dispositive Motion at p. 5. The Defendants are not entitled to summary judgment on this claim.

I.    Standard for a Constitutional Violation

The Eighth Amendment requires prison officials to "provide humane conditions of confinement" for inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). As a result, deliberate indifference to a prisoner's serious illness or injury is actionable under Section 1983. *See Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976). A prison official violates the Eighth Amendment when the deprivation was "sufficiently serious" and resulted from "deliberate indifference" to an inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). However, a delay in medical care violates the Eighth Amendment only if the passage of time had resulted in substantial harm. *See Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001).

"Substantial harm" may consist of pain experienced while the inmate is waiting for treatment. *See Kikumura v. Osagie*, 461 F.3d 1269, 1292 (10th Cir. 2006) ("The 'substantial harm' can also be an intermediate injury, such as the pain experienced while waiting for treatment and analgesics." (citation omitted)). For an injury to reach constitutional

magnitude, however, the pain must be "considerable." *See Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001) ("We have held that the substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." (citation omitted)).

II.     The Plaintiff's Claim Against Nurse Carney

The Plaintiff claims that Nurse Carney had refused to provide medical treatment on December 8, 2006. Complaint at pp. 2-4; *see supra* p. 1. The Defendants argue that the Plaintiff had later obtained treatment and that he did not experience any harm from the delay. Defendants' Dispositive Motion at pp. 4-6. A genuine issue of material fact exists regarding the harmful consequences of the delay in treatment.

In the complaint, the Plaintiff states under oath that:

- he has pyoderma gangrenosum, a necrotizing, non-infectious, inflammatory skin disease, which is a rapidly enlarging painful ulceration;[6]

- the skin disease causes great pain and agony and has deteriorated his lower leg;[7] and

- the wounds became worse on December 8, 2006.

---

[6]     "Pyoderma gangrenosum is a destructive, necrotizing, noninfective ulceration of the skin." 1 Samuel Moschella, M.D. & Harry Hurley, M.D., *Dermatology* 1213 (3d ed. 1992).

[7]     With pyoderma gangrenosum, "lesions are usually distributed over the lower extremities and trunk." 1 *Clinical Dermatology* 5-12 at 1 (21st rev. D. Joseph Demis, M.D. ed. 1994). The lesions are often painful. *See id*. 5-12 (lesions associated with pyoderma gangrenosum "are often painful" (footnote omitted)); Richard Odom, M.D., William James, M.D., & Timothy Berger, M.D., *Andrews' Diseases of the Skin: Clinical Dermatology* 158 (9th ed. 2000) ("[f]ully developed lesions," associated with pyoderma gangrenosum, "are typically extremely painful").

Complaint at pp. 4, 6; *see Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) ("The plaintiff's complaint may . . . be treated as an affidavit if it alleges facts based on the plaintiff's personal knowledge and has been sworn under penalty of perjury." (citation omitted)). After Mr. Robinson sought medical attention on December 8, 2006, the first evidence of actual treatment consists of a progress note on January 11, 2007. Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint, Exh. 7 at p. 7 (July 3, 2007) ("Special Report").[8] By then, 34 days had passed since Mr. Robinson's attempt to obtain treatment for his pain and aggravation of the wound. Special Report, Exh. 7 at p. 7. Viewing the verified statements in the light most favorable to Mr. Robinson, the trier of fact could conclude that he had experienced substantial pain after the disagreement with Nurse Carney.

The Tenth Circuit Court of Appeals considered a similar issue in *Mata v. Saiz*, 427 F.3d 745 (10th Cir. 2005). There a prisoner sought medical attention for severe chest pain, and a nurse said that she could not help him because the infirmary was closed. *See Mata v. Saiz*, 427 F.3d at 750. Two days later, another nurse examined the prisoner. *See id.* A doctor reviewed test results and ordered the nurse to send the inmate to the hospital. *See id.* The inmate went, but only after he was forced to walk to and from the main part of the facility to change clothes. *See id.* The Tenth Circuit Court of Appeals held that a genuine

---

[8]   In their brief, the Defendants state that Mr. Robinson had an appointment to see Dr. Hensley a "few days" after the incident on December 8, 2006. Defendants' Dispositive Motion at p. 5. But the Defendants do not present any evidence that the appointment was carried out.

issue of material fact existed because the evidence provided reasonable support for a finding that the prisoner had experienced severe pain for several days.[9]

Under *Mata v. Saiz*, the fact-finder could reasonably regard the pain as considerable during the period that the Plaintiff was awaiting treatment. Mr. Robinson alleges under oath that his condition had caused great pain and agony and had worsened on December 8, 2006, when he requested treatment. *See supra* pp. 6-7.[10] The fact-finder could reasonably infer that Mr. Robinson was in considerable pain during the ensuing 34 days that he was waiting for treatment.

The Defendants present an affidavit by Ed Carns, M.D. Special Report, Exh. 2. There Dr. Carns states that as of July 2, 2007, Mr. Robinson was "doing very well," that one ulcer had healed, and that the other was improving. *Id*. But this evidence does not foreclose a reasonable fact-finder from concluding that the Plaintiff had experienced substantial pain

---

[9] *Mata v. Saiz*, 427 F.3d at 754-55; *see also Sealock v. State*, 218 F.3d 1205, 1210 (10th Cir. 2000) (holding that summary judgment for the defendant was unwarranted when a prisoner had presented evidence of "pain and suffering" for "several hours" as a result of a delay in treatment).

[10] Two prominent professors in dermatology noted that pyoderma gangrenosum usually requires aggressive therapy, stating:

> Aggressive therapy with systemic corticosteroid therapy is usually required once the diagnosis is firmly established because pyoderma gangrenosum may progress rapidly. Prednisone 1 mg/kg/day is often used. The dose must be rapidly increased or pulse therapy or split-dose regimens employed if disease progression continues.

1 Samuel Moschella, M.D. & Harry Hurley, M.D., *Dermatology* 590 (3d ed. 1992) (citation omitted).

while he was waiting for treatment.[11] The issue is whether Mr. Robinson was in considerable pain during the 34-day period beginning on December 8, 2006. His alleged improvement months later is not dispositive, and the Court should reject the Defendants' argument for summary judgment.

## THE PLAINTIFF'S REQUESTS

Invoking Fed. R. Civ. P. 56(f), Mr. Robinson asserts an inability to obtain "declarations" from other inmates. Plaintiff's Response at p. 2. The Plaintiff states that several inmates have been transferred to other facilities and asks that the Court:

- deny the Defendants' dispositive motion,

- order prison officials to allow the Plaintiff to write inmates in other facilities, and

- order prison officials to bring Mr. Robinson to the courthouse for testimony.

*Id.* The Court should deny Mr. Robinson's requests.

I.  Request to Deny the Defendants' Dispositive Motion

Mr. Robinson invokes Fed. R. Civ. P. 56(f), stating that the Court should deny the summary judgment motion based on his inability to obtain affidavits from prisoners who had transferred to other facilities. *Id.* As noted above, however, the Court should deny the summary judgment motion on other grounds. *See supra* pp. 5-9. Approval of this

---

[11] *See Stack v. McCotter*, 79 Fed. Appx. 383, 389 (10th Cir. Oct. 24, 2003) (unpublished op.) ("even if [the prisoner] cannot show permanent injury, that is not fatal to his delay claim").

recommendation would moot the Plaintiff's argument for denial of the summary judgment motion under Rule 56(f).

II.     Request for an Order Permitting the Plaintiff to Write Inmates at Other Facilities

The Plaintiff also requests that the Court order prison officials to allow him to write inmates at other facilities. Plaintiff's Response at p. 2. As stated below, the Court should request counsel for Mr. Robinson if he seeks legal representation. *See infra* pp. 10-11. If he does and an attorney is found, he or she could communicate with the other prisoners on behalf of Mr. Robinson. Accordingly, the Court should deny the Plaintiff's request for an order authorizing correspondence between inmates.

III.    Request for Transportation for Purposes of Testimony

Finally, Mr. Robinson requests that prison officials be required to transport him for purposes of testifying. Plaintiff's Response at p. 2. This request should be denied. As discussed below, the undersigned suggests that the Court request legal representation for Mr. Robinson if he wants an attorney. *See infra* pp. 10-11. If counsel enters an appearance, he or she would be responsible for preparation of a writ of habeas corpus ad prosequendum and coordination of transportation for trial.

POSSIBLE LEGAL REPRESENTATION FOR THE PLAINTIFF

The Plaintiff is representing himself and the suggested ruling would leave one claim for trial. The trial on this claim could be facilitated by legal representation for Mr. Robinson, and the Court can request counsel for him. *See* Prison Litigation Reform Act, 28 U.S.C.

§ 1915(e)(1) (2000).  Thus, the Court should inquire whether Mr. Robinson would like assistance in obtaining legal representation.

## SUMMARY OF RECOMMENDATIONS

The Court should:

- grant the Defendants' motion to dismiss on the Plaintiff's claim involving a delay in obtaining pain medication,

- deny the Defendants' motion for summary judgment on Mr. Robinson's claim involving a refusal to provide medical treatment on December 8, 2006,

- deny the Plaintiff's request to deny summary judgment based on Fed. R. Civ. P. 56(f),

- deny Mr. Robinson's request for orders permitting communication with inmates at other facilities and requiring transportation to the courthouse for testimony, and

- notify Mr. Robinson that if he wishes judicial assistance in finding counsel, he should file a request for legal representation within twenty days of the order.

## NOTICE OF RIGHT TO OBJECT

The parties can object to the present report and recommendation.  Any such objection must be filed with the Clerk of this Court by August 30, 2007.  *See* W.D. Okla. Local Civil Rule 72.1.  The failure to timely object would foreclose appellate review of the suggested rulings.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *cf. Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

STATUS OF REFERRAL

The referral is terminated.

Entered this 10th day of August, 2007.

_____
Robert E. Bacharach
United States Magistrate Judge